1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11 | RONALD MOORE,                          CASE NO. 1:12-cv-00188-LJO-SKO

12 |                    Plaintiff,          **FINDINGS AND**
                                            **RECOMMENDATIONS THAT**
13 |         v.                             **PLAINTIFF'S MOTION FOR**
                                            **DEFAULT JUDGMENT BE**
14 |                                        **GRANTED**
    | JUAN CISNEROS, et al.
15 |                                        (Doc. No. 25)

16 |                    Defendants.         **OBJECTIONS DUE: 21 DAYS**
    | _____/
17

18 |                      **I.  INTRODUCTION**

19 |        On October 28, 2012, Plaintiff Ronald Moore ("Plaintiff") filed a motion for default

20 | judgment. (Doc. 25.) No opposition to Plaintiff's motion was filed. A hearing was held on

21 | November 14, 2012. Tanya Moore, Esq., appeared telephonically on behalf of Plaintiff; Defendant

22 | Juan Cisneros did not appear. Plaintiff's counsel was ordered to file a supplemental brief, which was

23 | filed on November 27, 2012. (Doc. 29.) For the reasons set forth below, the Court RECOMMENDS

24 | that Plaintiff's motion for default judgment BE GRANTED in the amount of $9,219.70.

25 |                  **II.  FACTUAL BACKGROUND**

26 |        On February 9, 2012, Plaintiff filed a complaint pursuant to Title III of the Americans with

27 | Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; the Disabled Persons Act pursuant to

28 | California Civil Code § 54; the California Unruh Act, California Civil Code § 51 *et seq.*; and

California Health & Safety Code §§ 19955, 19959.  (Doc. 1.)  The complaint seeks an award of statutory damages, prejudgment interest on the damages, costs of suit, attorney's fees, and declaratory and injunctive relief.  (Doc. 1.)  Plaintiff alleges that he requires the use of a wheelchair when traveling in public (Doc. 1, ¶ 8), and the property that is the subject of this suit, Serrano Chipotle Mexican Restaurant (the "Property"), presents numerous architectural barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility.  (Doc. 1, ¶ 11.)

Defendant Hector M. Serrano ("Serrano") was served with the complaint on February 24, 2012, and filed an answer on May 4, 2012.  (Docs. 7, 12.)  Defendant Juan Cisneros ("Cisneros") was served with the complaint on March 15, 2012, but failed to file a responsive pleading.  (*See* Doc. 10).  Cisneros' default was entered on May 18, 2012.  (Doc. 16.)

On September 5, 2012, Plaintiff filed an "amended" Notice of Settlement indicating that the action had been settled with regard to Serrano only.  (Doc. 21.)  The district court issued an order specifying that any motion for default judgment against Cisneros must be filed no later than October 1, 2012.  (Doc. 22.) On September 19, 2012, Plaintiff and Serrano filed a stipulation dismissing the action against Serrano.  (Doc. 23.) On September 28, 2012, Plaintiff filed a motion for default judgment against Cisneros, which is currently pending before the Court.  (Doc. 25.)

## III.  DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).   It is within the sole discretion of the court as to whether default judgment should be entered.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment.  *See id.*  Instead, the Ninth Circuit has determined that a court should consider seven discretionary factors, often referred to as the "Eitel factors," before rendering a decision on default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The *Eitel* factors include the following: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action,

1  (5) the possibility of a dispute concerning material facts, (6) whether the default was due to

2  excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring

3  decisions on the merits. *See id.*

4      A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc.*

5  *v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be

6  different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P.

7  54(c). If the facts necessary to determine the damages are not contained in the complaint, or are

8  legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*,

9  980 F.2d 1261, 1267 (9th Cir. 1992).

10      Finally, once the court clerk enters a default, the well-pleaded factual allegations of the

11  complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys.,*

12  *Inc.*, 826 F.2d at 917.

13  **B.    Analysis**

14      **1.    The *Eitel* Factors Weigh in Favor of Default Judgment**

15          **a.    Prejudice to Plaintiff if Default Judgment not Granted**

16      If default judgment is not entered, Plaintiff will effectively be denied a remedy until such

17  time as Cisneros participates and makes an appearance in the litigation – which may never occur.

18  Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this

19  factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal.

20  2003).

21          **b.    Merits of Plaintiff's Substantive Claims and the Sufficiency of the**

22          **Complaint**

23      The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims

24  pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors,

25  courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought.

26  *See Danning v.Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*,

27  503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded

28  or to admit conclusions of law.") (internal quotation marks omitted).

3

1    Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis

2    of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined

3    as a failure to remove "barriers . . . where such removal is readily achievable." *Id.*

4    § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir.

5    2011) (en banc).  Where a barrier's removal is not "readily achievable," a public accommodation

6    must make its facilities available through "alternative methods if such methods are readily

7    achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

8    "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is

9    disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

10   operates a place of public accommodation; and (3) the plaintiff was denied public accommodations

11   by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730

12   (9th Cir. 2007).  Further, "[t]o succeed on an ADA claim of discrimination on account of one's

13   disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility

14   at the defendant's place of business presents an architectural barrier prohibited under the ADA, and

15   (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d

16   1065, 1085 (D. Haw. 2000).

17   According to the complaint, Plaintiff "requires the use of a wheelchair when traveling about

18   in public," and he is thus "physically disabled" as defined by the applicable California and federal

19   laws.  (Doc. 1, ¶ 8.)  The Property is a facility of public accommodation and functions in a non-

20   residential capacity whose activity affects commerce.  (Doc. 1, ¶ 9.)  Plaintiff alleges that Cisneros

21   owns, operates, or leases the Property; thus, he is allegedly liable for the Property's compliance with

22   the ADA.  (Doc. 1, ¶ 7.)[1]

23   Plaintiff visited the Property and alleges that Defendants failed to provide barrier-free access

24   to the Property in the following ways: (1) missing or incorrect warning signage installed at the

25   parking facilities; (2) accessible parking spaces and access aisles were not properly configured and/or

26   exceed the maximum slope allowed; (3) parking spaces and/or access aisles reserved for persons

27   with disabilities are improperly marked and/or identified; (4) there is no properly configured and/or

28

---

[1] Plaintiff's supplemental brief clarifies that Cisneros is the owner of the Property.  (Doc. 29.)

1    identified accessible route provided within the boundary of the site, (5) there are no sufficient

2    clearances provided for a wheelchair inside the Property; (6) there is no accessible seating provided

3    in the Property; and (7) there is no accessible restroom provided.  (Doc. 1, ¶¶ 10-11.)  Plaintiff

4    alleges that the removal of these architectural barriers is readily achievable, or alternatively, the

5    services could have been made available through alternative methods that were readily achievable.

6    (Doc. 1, ¶ 19.)  As these facts are taken as true regarding Cisneros following his entry of default,

7    Plaintiff has met his burden to state a prima facie Title III discrimination claim.

8         California's Disabled Person's Act ("CDPA") provides that "individuals with disabilities or

9    medical conditions have the same right as the general public to the full and free use" of "public

10   places" and "shall be entitled to full and equal access" to "places to which the general public is

11   invited."  Cal. Civ. Code §§ 54, 54.1(a)(1).  The CDPA incorporates by reference an individual's

12   rights under the ADA, and provides that a violation of the ADA constitutes a violation of the CDPA.

13   Cal Civ. Code §§ 54(c), 54.1(d).  Plaintiff sufficiently alleges that Defendants discriminated against

14   him by denying him full and equal access to the Property; further, Plaintiff has sufficiently alleged

15   a claim under the ADA and thus a claim under the CDPA.  (Doc. 1, ¶¶ 31-37.)

16        Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal

17   accommodations, advantages, facilities, privileges, or services in all business establishments of every

18   kind whatsoever."  Cal Civ. Code § 51(b).  Additionally, no business establishment of any kind

19   whatsoever shall discriminate against any person in California on account of disability.  Cal Civ.

20   Code § 51.5.  The Unruh Act also incorporates an individual's rights under the ADA by reference,

21   such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ.

22   Code § 51(f).  Here, Plaintiff alleges that Defendants denied him full and equal accommodations,

23   advantages, facilities, privileges and services in a business establishment based on his disability.

24   (Doc. 1, ¶¶ 38-45.)  Further, because Plaintiff's complaint properly alleges a prima facie claim under

25   the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh

26   Civil Rights Act claim.

27        Under the California Health and Safety Code § 19955, it is mandated that all public

28   accommodations constructed in California comply with the requirements of Government Code

§ 4450.  Pursuant to Section 4450, "all buildings, structures, sidewalks, curbs, and related facilities, construed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities."  Cal. Gov. Code § 4450(a).  Additionally, non-exempt public accommodations constructed prior to July 1, 1970, and later altered or structurally repaired, are required to comply with the same requirements of the California Health and Safety Code.  Cal. Health & Safety Code § 19959.

For purposes of pleading this claim, Plaintiff incorporates his allegations regarding the barriers he encountered at the Property.  (Doc. 1, ¶ 46.)  Further, he alleges that the Property is a public accommodation "constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the [Property] was not exempt under the Health and Safety Code § 19956."  (Doc. 1, ¶ 49.)  Although largely boilerplate, this claim is sufficiently pled.  *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364, at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment).

While Plaintiff's allegations are generic to both Defendants as either co-owners, co-tenants, or as landlord and tenant, Defendants are jointly and severally liable for ADA violations in any of these capacities.  *See Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000).  The complaint sufficiently states these causes of action, and there appears to be merit to the substantive allegations.  As such, these *Eitel* factors weigh in favor of default judgment.

**c.    Sum of Money at Stake**

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of default judgment.  Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions.  *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).  Here, Plaintiff is seeking a default judgment in the amount of $10,119.70 which includes attorney's fees and costs.  This is not a relatively large sum of money, nor does it appear unreasonable in light of the allegations in the complaint.

### d.    Dispute Concerning Material Facts

With regard to this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Cisneros has submitted nothing to contradict the well-pled allegations.  Accordingly, this factor favors entry of default judgment.

### e.    Default due to Excusable Neglect

Cisneros failed to file a responsive pleading, oppose Plaintiff's motion for default judgment, or appear at the November 14, 2012, hearing regarding Plaintiff's motion.  The Court has no evidence before it establishing that Cisneros' failure to participate in the litigation is due to excusable neglect.  Thus, this factor weighs in favor of granting default judgment.

### f.    Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case.  In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

### 2.    Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

### a.    Declaratory Relief

Plaintiff's complaint and motion for default judgment seek declaratory relief.  Plaintiff asserts that, by virtue of Defendant Cisneros' default, the allegations of the complaint are deemed true and constitute a sufficient ground for the Court to find that Cisneros has violated Title III of the ADA.  Based on the allegations in the complaint, Plaintiff is entitled to a declaration that, as it pertains to the Property, Cisneros is in violation of Title III of the ADA.

### b.    Statutory Damages

The Unruh Civil Rights Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation.  Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination").  A violation

of the ADA constitutes a violation of the Unruh Act.  As such, Plaintiff asserts that he is entitled to $4,000 in statutory damages pursuant to the California Civil Code § 52(a).

Plaintiff has sufficiently alleged facts indicating that he visited the Property and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.  (Doc. 1, ¶¶ 10-11.)  Thus, Plaintiff is entitled to an award of $4,000 in statutory damages.

### c.    Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion.  California Civil Code § 55 also provides for attorney's fees and costs for obtaining injunctive relief; section 54.3 provides fees for recovery of damages, both to enforce the "full and equal access" guaranteed to disabled persons by Section 54.1.

Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate.  *Ferland v. Conrad Credit Corp*, 244 F.3d 1145, 1146-48 (9th Cir. 2001).  The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *See D'Emanuele [v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990)]; *Hensley [v. Eckerhart*, 461 U.S. 424,] 461 (1983).  The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed.  *See Hensley*, 461 U.S. at 433.  A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.  Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n. 9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation).  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041,1045 (9th Cir. 2000).

Here, Plaintiff seeks an award of $8,805.70 for total billable time spent on the case as well as $1,314 in costs and litigation expenses. (Doc. 25-1, 6:4-10.) Specifically, Plaintiff requests $7,221 for 24.07 hours of work expended by Ms. Tanya Moore, Esq. at an hourly rate of $300. Plaintiff also seeks $1,584.70 for 13.70 hours spent by paralegal Marejka Sacks at an hourly rate of $115.

### (i)    Ms. Moore's Time Expended and Hourly Rate

With regard to the number of hours expended by Ms. Moore, the Court finds that the amounts claimed by Plaintiff for certain tasks are reasonable; however, some of the time expended is unreasonable, duplicative, or inadequately documented and should be reduced.

There are numerous entries throughout the billing statement that reflect time spent reviewing communications from the Court:

| Date | Activity | Time Spent |
|---|---|---|
| 02/09/2012 | Reviewed communications from court | 0.32 (19.2 minutes) |
| 02/10/2012 | Communication Misc.: civil new case documents issued; initial scheduling conference set for 6/5/12 at 9:30 in courtroom 7 before [Judge Oberto] | 0.38 (22.8 minutes) |
| 02/11/2012 | Reviewed communications from court and instructions to paralegal re processing and calendaring | 0.13 (7.8 minutes) |
| 03/20/2012 | Reviewed communication from court | 0.12 (7.2 minutes) |
| 03/20/2012 | Reviewed communication from court and instructions re calendaring | 0.10 (6 minutes) |
| 04/02/2012 | Communication from court: Reviewed communication from court | 0.10 (6 minutes) |
| 04/02/2012 | Communication from court: Reviewed communication from court | 0.12 (7.2 minutes) |
| 05/18/2012 | Communication from court: Clerk entry of Default | 0.18 (10.8 minutes) |
| 05/18/2012 | Communication from court: Request for Entry of Default as to Juan Cisneros by Ronald Moore | 0.28 (16.8 minutes) |

| | | |
|---|---|---|
| 05/19/2012 | Communication from court:  Reviewed communication from court and updated tasks | 0.22  (13.2 minutes) |
| 05/23/2012 | Communication from court:  Reviewed Joint Scheduling Report by Ronald Moore | 0.18  (10.8 minutes) |
| 06/06/2012 | Communication from court:  Reviewed minutes for proceedings held 6/5/2012 | 0.10  (6 minutes) |
| 08/08/2012 | Communication from court:  Reviewed filed pleadings | 0.10  (6 minutes) |
| 08/22/2012 | Communication from court:  Reviewed court's order, instructions to paralegal | 0.29 (17.4 minutes) |
| 08/22/2012 | Communication from court:  Minutes: For proceedings held before [Judge Oberto] | 0.20  (12 minutes) |
| 08/31/2012 | Communication from court:  Notice of Settlement of Entire Action | 0.10  (6 minutes) |
| 09/04/2012 | Communication from court:  Order After Settlement signed by [Judge O'Neill] | 0.30  (18 minutes) |
| 09/05/2012 | Communication from court:  Amended Document | 0.12  (7.2 minutes) |
| 09/08/2012 | Communication from court: Reviewed communication from court | 0.32  (19.2 minutes) |
| 09/18/2012 | Communication from court:  Amended Order After Settlement, signed by [Judge O'Neill] | 0.21  (12.6 minutes) |

(Doc. 25-3, p. 1-9.)

**Total:**          **3.87 hours**

When considering the time entries in total, the amount of time spent essentially reviewing the docket is unreasonable, particularly given the substance of the communications and docket entries.

On February 9, 2012, Ms. Moore expended 0.32 hours reviewing "communications from court." (Doc. 25-3, p. 1.) The Court did not issue any "communication" on February 9, 2012.  The docket reflects that on February 9, 2012, Plaintiff filed his complaint and paid the filing fee.  (Docs. 1, 3.)  This time entry is not sufficiently specific and does not comport with the docket in this case. *See Hensley*, 461 U.S. at 433-34 (fee applicant bears the burden of documenting the appropriate

10

hours expended in the litigation and must submit evidence in support of the hours worked).  Thus, this time should not be awarded.

On February 10, 2012, the only documents issued by the court were the civil new case documents and a summons.  (Docs. 4, 5.)  These documents are issued in all civil cases in this district and are very similar, even among different judges.  Given the routine nature of these orders, counsel familiar with this district's new civil case documents, as counsel is here, would require only a minimal amount of time to review these documents.  Ms. Moore, however, spent 0.51 hours (30.6 minutes) reviewing these documents.  First, Ms. Moore spent 0.38 hours reviewing the documents as a communication from the Court on February 10, 2012.  (Doc. 25-3, p. 1).  Second, Ms. Moore spent 0.13 hours reviewing these documents again on February 11, 2012, and giving instructions to her paralegal regarding calendaring.  (Doc. 25-3, p. 2).  Further, the paralegal also reviewed these documents and billed for over an hour of time to do so.  (Doc. 25-3, p. 1.)  Ms. Moore's time on February 10, 2012, (0.38 hours) is excessive and her time reviewing these documents again on February 11, 2012, is duplicative.[2]  *See Hensley*, 461 U.S. at 433-34 (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary).  In light of the routine nature of the documents reviewed, Ms. Moore's time spent on February 10, 2012, is excessive and should not be awarded.

On March 20, 2012, Ms. Moore recorded 0.22 hours (13.2 minutes) reviewing "communication[s] from the [C]ourt" and giving "instructions re calendaring."  (Doc. 25-3, p. 2.)  There was no communication issued by the Court on that date.  In fact, the last communication issued by the Court was on February 10, 2012, when the Court issued the civil new case documents.  (*See* Doc. 5.)  Rather, on March 20, 2012, Plaintiff filed executed summonses; the only communication from the Court would have been an email showing that docket activity.  (*See* Docket 8.)  It should not have taken Ms. Moore 13.2 minutes to review a document she filed, or an automatically generated CM/ECF email showing she had filed documents on the docket.

---

[2] (*See* Doc. 25-3, p. 2.)

On April 2, 2012, Ms. Moore spent 0.22 hours (13.2 minutes) reviewing communication from the Court. (Doc. 25-3, p. 3.) On that date, Plaintiff filed a stipulation and proposed order for an extension of time. (Doc. 9.) The only communication from the Court would have been an automatic email generated by CM/ECF indicating that docket activity had occurred. It was unreasonable for Ms. Moore to spend 13.2 minutes reviewing a docket entry of a document she had prepared and filed and for which she had separately billed to prepare. (*See* Doc. 25-3, p. 3.)

On May 18 and 19, 2012, Ms. Moore recorded 0.68 hours (40.8 minutes) reviewing communications from the Court. (Doc. 25-3, p. 4 (three separate time entries).) On that date, Plaintiff filed a request for entry of default, and a one-page order was issued indicating that the Clerk of the Court had entered the default of Defendant Cisneros. (Docs. 13, 14.) Ms. Moore also billed separately for the time spent reviewing the request for entry of default that was prepared by a paralegal. (Doc. 25-3, p. 4 (5/16/2012 time entry for "[p]reparation of pleadings").) Ms. Moore should not have required 40.8 minutes to review a document she and her paralegal had already billed to prepare and a one-page court order – this is excessive.

On May 23, 2012, Ms. Moore spent 0.18 hours (10.8 minutes) reviewing a communication from the Court. (Doc. 25-3, p. 4.) On that date, Plaintiff filed a Joint Scheduling Report. (Doc. 15.) There was no communication from the Court other than, presumably, an automatic CM/ECF email alerting the parties that there was docket activity. Spending 10.8 minutes reviewing a document that Ms. Moore had already billed to prepare and an automatically generated email noting that docket activity had occurred is unreasonable.

On June 6, 2012, Ms. Moore spent 0.10 hours (6 minutes) reviewing a 5-sentence docket entry recording the minutes of the scheduling conference held on June 5, 2012. (Doc. 25-3, p. 5; *see also*, Doc. 16.) On August 8, 2012, Ms. Moore spent 0.10 hours (6 minutes) reviewing a "communication" from the Court, which the Court presumes was an automatically generated email notifying the parties that docket activity had occurred when Plaintiff filed the Joint Scheduling Report (the preparation for which was separately billed). (Doc. 17.) On August 22, 2012, Ms. Moore spent 0.49 hours (29.4 minutes) reviewing another 5-sentence minute order and giving instructions to her paralegal. (Doc. 18; *see also* Doc. 25-3, p. 7.) On August 31, 2012, Ms. Moore

spent 0.10 hours (6 minutes) reviewing the Notice of Settlement that she had filed (the time spent preparing that document was separately billed). (Doc. 25-3, p. 7.)  On September 4 and 8, 2012, Ms. Moore spent a total of 0.62 hours (37.2 minutes) reviewing two orders issued by Judge O'Neill that were each one page in length.  (Doc. 25-3, p. 7; *see also* Docs. 20, 22.)  Ms. Moore also spent 0.12 (7.2 minutes) of time reviewing a Court communication that presumably was an automatically generated email indicating that she had filed an amended document on September 5, 2012.

On September 19, 2012, Plaintiff filed a stipulation and proposed order (Doc. 23), which Judge O'Neill signed (Doc. 24).   The time to prepare the stipulation and proposed order was billed; Ms. Moore then spent 0.21 hours (12.6 minutes) reviewing these documents and Judge O'Neill's order thereon.  This is duplicative and unreasonable.

Reviewing these documents should have taken only a few minutes, particularly considering that Ms. Moore had already billed for the preparation of the documents themselves and then billed to review the documents that had been filed and recorded that time as "communication from the court."  While reviewing automatic emails showing the occurrence of CM/ECF docket activity and reviewing short Court orders does take time, billing judgment must be exercised in the accumulation of billing entries of this type.  Based on the activities recorded in reviewing routine, simple documents, the Court finds that only 0.87 (52.2 minutes) of the time expended on these activities is reasonable; thus, a reduction of 3.0 hours is warranted.

With regard to the hourly rate to be charged, courts generally calculate these rates according to the prevailing market rates in the relevant legal community.  *Blum*, 465 U.S. at 895.  In general, courts utilize the rates of attorneys practicing in the forum district, here, the Eastern District of California, Fresno.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (1993); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991).  The fee applicant bears the burden of producing sufficient evidence that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n.11.

Plaintiff asserts that Ms. Moore specializes in representing plaintiffs in disability actions, and Ms. Moore states in her declaration that she has filed and successfully prosecuted over 200 civil

rights actions, she has handled numerous litigation matters through trial, and has been practicing law for twelve years. (Doc. 25-2, ¶¶ 2-3.) She usually bills at $350 per hour, but has reduced her hourly rate in this case. (Doc. 25-1, 5:9-11.) Plaintiff asserts that $300 per hour has been found reasonable for Ms. Moore's work in other ADA cases in the Fresno division of this District, and should be awarded here. (Doc. 25-1, 5:7-11.) The Court finds that $300 is a reasonable hourly rate for work performed by Ms. Moore. Accordingly, Plaintiff should be awarded $6,321 (21.07 x $300) for work performed by Ms. Moore.

### (ii)    Paralegal Rate and Time Expended

The Court finds that the 13.78 hours expended by paralegal Marejka Sacks were reasonable (*see* Doc. 25-7, ¶ 3), and there is no reason to reduce the hours requested. Plaintiff cites *Gutierrez v. Onanion*, 1:11-cv-00579-SMS, 2012 WL 1868441, at *2 (E.D. Cal. May 22, 2012) for the proposition that courts in this district have determined that $115 per hour to be a reasonable rate. This district has found reasonable and awarded $115 per hour for work performed by a paralegal in ADA cases. *See id;Moore v. Ruiz*, 1:11-cv-2159-LJO-GSA, 2012 WL 3778874, at *6 (E.D. Cal. Aug. 31, 2012). Thus, the Court recommends that Plaintiff be awarded 13.78 hours of paralegal time expended at an hourly rate of $115 for a total of $1,584.70.

### (iii)    Litigation Expenses and Costs

Plaintiff seeks to recover costs in the amount of $1,314. In Section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the prevailing party other than the United States, a reasonable attorney's fee, including litigation expenses and costs. 42 U.S.C. § 12205. The costs here included expenses for the court filing fee, costs of service, and a fee for a site inspection of the Property. The statutory provisions of the ADA provide direct authority for the award of expert witness fees as litigation expenses under the ADA. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). Plaintiff's litigation expenses and costs are compensable and should be awarded.

### d.    Joint and Several Liability

In general, under both federal and California state law, liability among defendants for a successful plaintiff's attorney's fees is generally joint and several. *Turner v. Dist. of Columbia Bd.*

*of Elections & Ethics*, 354 F.3d 890 (D.C. Cir. 2004) (joint and several liability for attorney's fees awarded under 42 U.S.C. § 1988 for all non-fractionable claims against defendants); *Cal. Trout, Inc. v. Super. Ct.*, 218 Cal. App. 3d 187, 212 (1990) (awarding attorney's fees under California Code of Civil Procedure § 1021.5, noting that liability for the fees among defendants was joint and several); *Corder v. Gates*, 947 F.2d 374 (district court did not err in refusing to apportion attorney's fees among defendants in awarding fees under Section 1988).

Under the ADA, prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The express terms of the ADA hold a landlord and a tenant liable for noncompliance with the Act. *Botosan*, 216 F.3d at 832. In *Botosan*, the appellate court noted that the legislative history of the ADA supports this construction of the statute:

> This [provision] makes it clear that the owner of the building which houses the public accommodation, as well as the owner or operator of the public accommodation itself, has obligations under this Act. For example, if an office building contains a doctor's office, both the owner of the building and the doctor's office are required to make readily achievable alterations. It simply makes no practical sense to require the individual public accommodation, a doctor's office for example, to make readily achievable changes to the public accommodation without requiring the owner to make readily achievable changes to the primary entrance to the building.

> Similarly, a doorman or guard to an office building containing public accommodations would be required, if requested, to show a person who is blind to the elevator or to write a note to a person who is deaf regarding the floor number of a particular office.

> The amendment also clarifies that entities which lease public accommodations are covered by the requirements of this title.

*Botosan*, 216 F.3d at 832 (quoting H.R.Rep. No. 101-485(III), at 55-56 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 478-79).

Here, although the complaint does not specify whether Serrano and Cisneros were co-tenants, co-owners, or in a landlord-tenant relationship, in any of those cases, liability for failure to comply with the ADA is joint and several.[3] Even to the extent Defendants had an agreement to allocate responsibility for compliance with the lease – of which there is no evidence before the Court – each

---

[3] The complaint alleges that "Defendants own, operate, and/or lease the Facility . . . ." (Doc. 1, ¶ 7.) Plaintiff's supplemental brief clarified that Cisneros is the owner of the Property at issue. (Doc. 29.)

15

Defendant still remains responsible for ADA compliance.  *Botosan*, 216 F.3d at 832-34.  As Defendants are jointly and severally liable for damages and fees awarded under the ADA, it is appropriate that damages and attorney's fees be awarded in default judgment against Defendant Cisneros despite that Defendant Serrano has settled separately with Plaintiff.  Furthermore, no apportionment of the attorney's fees has been sought as Cisneros has defaulted, failed to oppose Plaintiff's motion for default judgment, and did not appear at the November 14, 2012, hearing.

Additionally, courts have awarded attorney's fees against one defendant for the plaintiff's counsel's time spent litigating against another defendant.  *See Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010) (citing *Californians for Responsible Toxic Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 979 (1989)).  Thus, in recommending an award of attorney's fees against Cisneros, the Court finds no basis to apportion the fees for Plaintiff's counsel's work spent litigating against Cisneros only.

Finally, Plaintiff has requested that the damages and fees against Cisneros be offset by the $4,000 settlement amount paid by Serrano.  Such an offset is appropriate where there is joint and several liability imposed, and an offset of $4,000 is recommended.  *See generally Velez v. Roche*, 335 F. Supp. 2d 1022, 1042-43 (N.D. Cal. 2004) (offset may be awarded where settlement and award against which offset is sought were (1) for the same injury and (2) the injury is indivisible such that there is joint and several liability among the settling and non-settling defendants) (citations omitted).

### e.   Conclusion

For the reasons set forth above, the Court recommends Plaintiff be awarded the following fees:

| Professional | Hourly Rate | Hours | Total |
|---|---|---|---|
| Ms. Moore | $300 | 21.07 | $6,321.00 (21.07 x 300) |
| Ms. Marejka Sacks | $115 | 13.78 | $1,584.70 (13.78 x 115) |
| | | **Total Fees** | $7,905.70 |

Additionally, Plaintiff should be awarded $1,314.00 for the costs of suit, and $4,000 in statutory damages.  Plaintiff also requests that Cisneros be granted a setoff in the amount of $4,000.  Thus, the total award of damages, fees, and costs (including the offset) recommended is $9,219.70.

## IV.  RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1.      Plaintiff's motion for default judgment should be GRANTED;

2.      Judgment be entered in Plaintiff's favor and against Defendant Cisneros;

3.      Defendant Cisneros be found and declared to be in violation of Title III of the Americans with Disabilities Act;

4.      Plaintiff be awarded statutory damages in the amount of $4,000;

5.      Plaintiff be awarded attorney's fees be awarded in the amount of $6,321.00 (21.07 hours x $300 per hour), paralegal fees in the amount of $1,584.70 (13.70 hours x $115 per hour), and costs of suit in the amount of $1,314.00;

6.      Defendant Cisneros be awarded a $4,000 offset for the settlement amount paid by Defendant Serrano.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    December 12, 2012**                         **/s/ Sheila K. Oberto**
                                                        UNITED STATES MAGISTRATE JUDGE